UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AMERICAN PSYCHIATRIC ASSOCIATION, THE NEW YORK STATE PSYCHIATRIC ASSOCIATION, on their behalf and in an associational capacity on behalf of their members, and MILEN BEYENE, VALERIA CALDERON, ELIZABETH CANTY, BONNIE DORIS ELLIOTT, DANIEL RICCOBONO, and NIMROD SHIMRONY, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>EMBLEMHEALTH, INC. and EMBLEMHEALTH PLAN, INC.,<br><br>               Defendants. | Case No. 1:25-cv-10783-JGK<br><br>Hon. John G. Koeltl |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT ........................................................................................1

II.  FACTUAL BACKGROUND .........................................................................................3

    A.  The Parties ..........................................................................................................3

    B.  Plaintiffs' Allegations Regarding the Provider Directory ................................5

    C.  Prior Assurances of Discontinuance and Regulatory History ..........................6

    D.  Plaintiffs' Claims ...............................................................................................7

III.  LEGAL STANDARD ....................................................................................................8

IV.  ARGUMENT ..................................................................................................................8

    A.  The Association Plaintiffs Lack Standing Under the Lanham Act ....................8

        1.  The Association Plaintiffs Lack Standing to Assert Claims on their Own Behalf ................................................................................................9

        2.  The Association Plaintiffs Lack Standing to Assert Claims on Behalf of Their Association Members ...............................................................10

    B.  The Court Should Decline to Exercise Jurisdiction Over the Putative Class Claims ..............................................................................................................14

    C.  No Reasonable Consumer Would Have Been Deceived .................................17

    D.  Plaintiffs Cannot Obtain Meaningful Relief Beyond the AOD .....................18

## TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 8

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004) ........................................................................... 11, 12, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 8

*Borden v. 400 E. 55th St. Assocs., L.P.*,
24 N.Y.3d 382 (2014) ................................................................................................ 16

*Charlton v. LG Energy Sol. Michigan, Inc.*,
No. 321CV02142RBMJLB, 2023 WL 1420726 (S.D. Cal. Jan. 31, 2023) ............................. 19

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020) ...................................................................................... 17

*Downing v. First Lenox Terrace Assoc.*,
107 A.D.3d 86 (1st Dep't 2013) ................................................................................ 16

*Gold v. N.Y. Life Ins. Co.*,
730 F.3d 137 (2d Cir. 2013) ...................................................................................... 15

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .............................................................................................. 10, 12

*Kommer v. Ford Motor Co.*,
No. 1:17-CV-296 (LEK/DJS), 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ........................ 19

*Lexmark International, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......................................................................................... 9, 10, 11

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ........................................................................................ 8

*Martin v. Sprint United Mgmt. Co.*,
No. 15 CIV. 5237 (PAE), 2017 WL 5028621 (S.D.N.Y. Oct. 31, 2017) ............................... 14

*Mazella v. Coca-Cola Co.*,
548 F. Supp. 3d 349 (S.D.N.Y. 2021) ....................................................................... 17

*Morrison v. Nat'l Australia Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ..............................................8

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
828 F. Supp. 1114 (S.D.N.Y. 1993), *aff'd*, 32 F.3d 690 (2d Cir. 1994) ....................11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ......................................................................................................17

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*,
629 F. Supp. 3d 116 (S.D.N.Y. 2022).........................................................9, 10, 11, 12

*Sefovic v. Mem'l Sloan Kettering Cancer Ctr.*,
No. 15 Civ. 5792 (PAC), 2017 WL 3668845 (S.D.N.Y. Aug. 23, 2017) ...................14

*Simeone v. T. Marzetti Co.*,
No. 21-CV-9111 (KMK), 2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023) ....................1

*Skillz Platform Inc. v. Papaya Gaming, Ltd.*,
No. 24CV1646 (DLC), 2025 WL 3268799 (S.D.N.Y. Nov. 21, 2025) ........................10

*Souza v. Exotic Island Enters., Inc.*,
68 F.4th 99 (2d Cir. 2023) ......................................................................9, 10, 11, 12

*Sperry v. Crompton Corp.*,
8 N.Y.3d 204 (2007) ......................................................................................................15

*Sugasawara v. Ford Motor Co.*,
No. 18-CV-06159-LHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ...................19

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) ......................................................................................................14

*Warth v. Seldin*,
422 U.S. 490 (1975) ......................................................................................................13

Statutes and Codes

United States Code
Title 15, Section 1125(a)...........................................................................................7, 9
Title 28, Section 1332(d)(4)(B) ...................................................................................15
Title 28, Section 1367(c)(3)..........................................................................................14

New York General Business Law
Section 349.............................................................................................. 8, 15, 17
Section 349(h)...............................................................................................................16
Section 350.............................................................................................. 8, 15, 17

New York Insurance Law
    Section 4226 ...................................................................................... 8, 14, 15, 17

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
    Rule 12(b)(1)...............................................................................................1, 8
    Rule 12(b)(6)...............................................................................................1, 8

New York Civil Practice Law and Rules
    Section 901(b)..........................................................................................15, 16

Defendants EmblemHealth, Inc. and EmblemHealth Plan, Inc. (collectively, "EmblemHealth" or "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint (the "Compl." or "Complaint") filed by the American Psychiatric Association ("APA"), the New York State Psychiatric Association ("NYSPA," and together with the APA, the "Association Plaintiffs"), and six individual Emblem plan member plaintiffs (the "Plan Member Plaintiffs" and, collectively with the Association Plaintiffs, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    PRELIMINARY STATEMENT

Plaintiffs' 259-paragraph Complaint is an exercise in futility. On February 19, 2026, the New York Attorney General and EmblemHealth entered into an Assurance of Discontinuance (the "AOD")[1] that addresses every category of harm alleged and provides every form of relief now sought—except for penalties sought but precluded by New York law. The AOD requires Defendants to undertake a comprehensive, years-long remediation effort to correct the very provider directory issues at the heart of the Complaint. Despite being given the opportunity to amend their pleading at a recent pre-motion conference, Plaintiffs chose to ignore this dispositive development. The Complaint fails as a matter of law for multiple, independent reasons.

First, the Association Plaintiffs lack Article III and statutory standing under the Lanham Act—the sole basis for federal subject matter jurisdiction. They are not commercial enterprises

---

[1]    The AOD is attached as Exhibit B to the Declaration of Amanda H. Freyre (the "Freyre Declaration") in Support of Defendants' Motion to Dismiss ("Ex. B"). In consideration of the Freyre Declaration, including its attached Exhibits A and B, Defendants respectfully request that the Court take judicial notice of Ex. B. *See Simeone v. T. Marzetti Co.*, No. 21-CV-9111 (KMK), 2023 WL 2665444, at *1 (S.D.N.Y. Mar. 28, 2023) (finding that courts routinely take judicial notice of records of government agencies).

whose position in the marketplace has been damaged by EmblemHealth's provider directory. They do not compete with EmblemHealth, sell goods or services in competition with health insurance products, or occupy any commercial position that could suffer harm cognizable under Section 43(a) of the Lanham Act. And the Association Plaintiffs cannot assert claims on their Association Members' behalf because those Association Members also have not alleged a commercial injury and, in any event, would be necessary participants in any such claim. Thus, the federal claims fail, and this Court lacks subject matter jurisdiction.

Second, because the federal claims must be dismissed for lack of standing, the Court should decline to exercise supplemental jurisdiction over the state law claims. But the Court need not rely solely on principles of comity—the Class Action Fairness Act of 2005 independently requires abstention with respect to the New York state claims under the "home state controversy exception," which, in an effort to curb forum shopping, requires federal courts to decline to exercise jurisdiction where two-thirds or more of the proposed class and the primary defendant(s) are citizens of the state where the action is filed. Plaintiffs' allegations show that the threshold for this exception is met. Moreover, New York law prohibits class action plaintiffs from seeking statutory damages, which the Plan Member Plaintiffs seek here as an end-run around New York state procedural law. In short, the state law claims are barred at every turn—by comity, by statute, and by the very rules Plaintiffs sought to evade by filing here.

Third, all of Plaintiffs' federal and state law claims fail because no reasonable consumer would be deceived by EmblemHealth's provider directory. The Complaint itself defeats Plaintiffs' theory: it acknowledges that the "Find a provider" tool includes a disclaimer stating that provider information is self-reported and verified only at initial credentialing and every three years thereafter. The Complaint further concedes that certain alleged "inaccuracies," such as duplicate

listings, are "immediately and obviously apparent to anyone who utilizes the provider directory." Compl. ¶ 152. No reasonable consumer viewing a database with these disclosed limitations would understand it as a warranty of real-time availability.

Fourth, and finally, this lawsuit would be a complete waste of judicial resources as the AOD provides all available relief for every alleged harm, rendering this litigation unnecessary before it began.

The Complaint should be dismissed in its entirety.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Defendant EmblemHealth, Inc. is a New York not-for-profit corporation that offers health plans to New York consumers and serves over three million individuals in the state. Compl. ¶ 42. Defendant EmblemHealth Plan, Inc. (formerly Group Health Incorporated, or "GHI") is a New York State not-for-profit health insurer and wholly-owned subsidiary of EmblemHealth, Inc. Compl. ¶ 28. EmblemHealth offers both "fully-insured" and "self-funded" insurance plans, and serves as a third-party administrator for numerous employers, including the City of New York. Compl. ¶¶ 43-44.

The City of New York offers its 1.25 million employees and retired employees a choice among ten health insurance plans, and for many years hired EmblemHealth to administer health insurance benefits through the GHI Comprehensive Benefits Plan ("GHI CBP").[2] Compl. ¶ 44. GHI CBP had the highest enrollment of any health plan offered to City employees, with approximately 60 percent of the City's workforce selecting GHI CBP, resulting in approximately

---

[2]    The GHI CBP was a preferred provider organization plan administered by EmblemHealth through 2025. As of January 1, 2026, all GHI CBP Plan Members were automatically re-enrolled into the NYCE preferred provider organization plan.

3

750,000 Plan Members as of 2025. Compl. ¶ 45. GHI CBP was a preferred provider organization ("PPO") plan in which EmblemHealth contracted with providers and set rates for health care services. Compl. ¶ 48. For Plan Members treated by an in-network mental health provider on an outpatient basis, the cost is a $15 co-pay per visit, with no deductible. Compl. ¶ 48. Plan Members who saw out-of-network providers are subjected to additional costs, including deductibles and payment schedules that use 1983 reimbursement rates. Compl. ¶¶ 49-50.

The Complaint acknowledges that EmblemHealth contracts with Carelon Behavioral Health ("Carelon"), a third-party behavioral health management company, to administer mental health and substance use disorder benefits for GHI CBP Plan Members, including to maintain provider networks for its health plans and make information about participating providers available to Plan Members and consumers through an online provider directory on its public website. Compl. ¶¶ 85-88. Carelon is responsible for credentialing behavioral health providers, maintaining the behavioral health provider network, and managing the accuracy of behavioral health provider information. Compl. ¶ 88.

Plaintiff APA is a national medical specialty society representing psychiatrists and physician members (the "APA Association Members") specializing in the diagnosis and treatment of mental illness, with approximately 39,000 APA Association Members across the United States. Compl. ¶ 16. The APA employs staff dedicated to working on problems of network adequacy and "ghost networks," including conducting "secret shopper" surveys and educating offices of Attorneys General on these issues. Compl. ¶ 17. Plaintiff NYSPA is a district branch of the APA representing psychiatrists in New York, with approximately 3,700 active members (the "NYSPA Association Members," and together with the APA Association Members, the "Association Members"), and dedicates significant resources to legislation aimed at curtailing insurance

practices that inhibit access to care. Compl. ¶¶ 18-19. Neither Association Plaintiff is a commercial enterprise engaged in the sale of goods or services in competition with EmblemHealth or any other health insurer. The Association Plaintiffs expressly disclaim any legal or equitable monetary relief for themselves or their Association Members and seek only equitable and injunctive relief. Compl. ¶ 20. No individual Association Member is a Plaintiff in this case.

The six individual Plan Member Plaintiffs are all members of GHI CBP who allege they or their family members experienced difficulties accessing behavioral health providers. Of the six, five live in the New York City area. Compl. ¶¶ 21-26. Collectively, the Plan Member Plaintiffs claim that they had difficulties searching EmblemHealth's provider directory for mental health providers and/or incurred out of network costs as a result of difficulties using the directory. Compl. ¶¶ 21-26.

### B.      Plaintiffs' Allegations Regarding the Provider Directory

EmblemHealth's provider directory is a searchable online tool that allows Plan Members to filter providers by specialty, location, and other criteria. According to the Complaint, some providers listed in the directory are not accepting new patients, are no longer in network, have incorrect phone numbers, or are listed at incorrect addresses. Compl. ¶¶ 59-79. Citing the results of a "secret shopper" survey, the Complaint also alleges that the directory contains both ghost listings and duplicate listings that make the network appear larger than it actually is. Compl. ¶¶ 56, 78-79. According to the Complaint, when searching for a mental health provider with "New York, NY" as the location and a 200-mile radius, there are over 1,000 listings referencing only 50 actual providers. Compl. ¶ 62. Citing prior AODs, the Complaint alleges that the alleged directory inaccuracies are longstanding. Compl. ¶¶ 51-55.

The Complaint states that EmblemHealth's "Find a provider" tool includes prominent disclaimers informing users that the provider information is self-reported by providers and is

verified only at initial credentialing and every three years thereafter. Compl. ¶¶ 87-88. The Complaint states that these disclaimers appear on the directory and are visible to users when searching for providers. *Id*. The Complaint further explains that certain alleged "inaccuracies," such as duplicate listings for individual providers appearing at multiple addresses, are "immediately and obviously apparent to anyone who utilizes the provider directory." Compl. ¶ 152.

The Complaint alleges that approximately 40 percent of providers listed with "New York, NY" addresses are telehealth-only providers, and that a significant percentage of listings are for providers associated with large institutions or hospital systems. Compl. ¶ 72. The Complaint does not contain any claims or allegations explaining how or why mental care through telehealth is inherently harmful to consumers or not as desirable as conventional, in-person services.

### C.    Prior Assurances of Discontinuance and Regulatory History

Prior to the filing of this action, the New York Attorney General conducted a comprehensive, years-long investigation into the very same conduct alleged in the Complaint. On February 19, 2026, EmblemHealth entered into the AOD with the New York Attorney General, which addresses every category of harm Plaintiffs allege and provides every form of relief they seek, aside from penalties and attorneys' fees.

The AOD requires EmblemHealth to maintain an accurate online provider directory with specified data fields, including: provider name, address, telephone number, licensure, digital contact information; whether the provider is accepting new patients; for mental health and substance use disorder providers, any affiliations with facilities certified by the Office of Mental Health or Office of Addiction Services and Supports; any restrictions regarding the availability of the provider's services, including age limitations or specific conditions treated; languages spoken; and for physicians, board certification and hospital affiliations. Ex. B ¶ 78.

6

The AOD further requires EmblemHealth to: verify every behavioral health provider's information every ninety days through outreach by electronic means, fax, or U.S. mail; correct directory listings within two business days of learning of any changes; remove providers who fail to verify their information within fifteen days of a verification cycle; respond to Plan Member inquiries within one business day; and hold Plan Members harmless (responsible only for in-network cost-sharing) when inaccurate network status information is provided. Ex. B ¶¶ 80, 82-84.

The AOD also establishes comprehensive monitoring and oversight through an independent monitor, who will submit biannual compliance reports to the Attorney General assessing EmblemHealth's compliance with directory accuracy, network adequacy, and related requirements. Ex. B ¶¶ 92-103. The independent monitor will monitor the adequacy of EmblemHealth's procedures for verifying provider information, analyze claims data, assess discrepancies in network breadth, and review consumer complaints. *Id*.

The AOD mandates restitution to all Plan Members who paid amounts in excess of in-network cost-sharing for behavioral health services rendered by non-participating providers who were incorrectly listed as participating providers, including interest at twelve percent. Ex. B ¶ 104. EmblemHealth must also pay $2.5 million in penalties, fees, and costs. Ex. B ¶ 109.

In sum, the AOD provides comprehensive relief addressing every form of injunctive, equitable, and monetary relief sought in the Complaint. The alleged harms have been addressed, and relief has been secured, through binding regulatory authority.

### D.    Plaintiffs' Claims

Plaintiffs assert seven causes of action: (1) violations of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (unfair competition and false affiliation); (2) violations of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (false advertising); (3) common law

unfair competition; (4) violations of New York General Business Law ("GBL") § 349; (5) violations of New York GBL § 350; (6) violations of New York Insurance Law § 4226; and (7) unjust enrichment. The Association Plaintiffs expressly disclaim any legal or equitable monetary relief for themselves or their Association Members and seek only equitable and injunctive relief. Compl. ¶ 20.

## III.    LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). A case is properly dismissed under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, but it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

## IV.    ARGUMENT

### A.    The Association Plaintiffs Lack Standing Under the Lanham Act

The sole basis for this Court's original jurisdiction is the Association Plaintiffs' claims under Section 43(a) of the Lanham Act, which they bring on "behalf of themselves and their

8

[association] members" Compl. ¶ 20. The Association Plaintiffs, however, lack standing to assert these claims for either party.

### 1.    The Association Plaintiffs Lack Standing to Assert Claims on their Own Behalf

The Association Plaintiffs lack standing to assert claims under Section 43(a) of the Lanham Act because they are not commercial market participants. To establish standing for a false advertising claim under § 1125(a), a plaintiff must "allege an injury to a commercial interest in reputation or sales." *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014). In other words, the plaintiff must be "engaged in 'commerce within the control of Congress' whose position in the marketplace has been damaged by [the defendant's] false advertising." *Id*. at 137. The Second Circuit has consistently applied this requirement, holding that Lanham Act plaintiffs must allege injury in the form of "direct diversion of sales or by a lessening of goodwill associated with its products." *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 119 (2d Cir. 2023) (citation omitted).

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, 629 F. Supp. 3d 116 (S.D.N.Y. 2022), is directly on point. There, the court dismissed an association's Lanham Act claim because it "failed to allege that it is a market participant, which fatally undermines any claim of injury proximately caused by [defendant's] conduct." *Id*. at 130. The same is true here. The APA and NYSPA are not commercial enterprises with any position in the marketplace. They do not compete with EmblemHealth—directly or indirectly—nor do they sell goods or services in competition with health insurance products. Put simply, they occupy no commercial position that could be "damaged" by EmblemHealth's provider directory. The Association Plaintiffs' individual claims must therefore be dismissed on this basis alone.

**2.     The Association Plaintiffs Lack Standing to Assert Claims on Behalf of Their Association Members**

An association has Article III standing to bring a claim on behalf of the Association Members only when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Association Plaintiffs fail to meet this standard.

First, the Association Plaintiffs' Association Members do not have standing to assert the Lanham Act claims. Where, as here, a Lanham Act plaintiff is a non-direct competitor, the complaint must affirmatively plead "actual injury and causation." *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 119 (2d Cir. 2023) (citation omitted). The Complaint alleges three categories of harm, none of which is sufficient to confer Lanham Act standing. *See* Compl. ¶¶ 120-131.

The Association Plaintiffs first claim reputational harm. However, the Complaint fails to allege that the reputational harms caused any consumer to "withhold trade" from the associations or the Association Members—the hallmark of commercial injury under the Lanham Act—or otherwise divert business from either the associations themselves or any Association Member. *See Skillz Platform Inc. v. Papaya Gaming, Ltd.*, No. 24CV1646 (DLC), 2025 WL 3268799, at *4 (S.D.N.Y. Nov. 21, 2025) (citation omitted) (reputational injury flowing from the claimed deception occurs when "deception of consumers causes them to withhold trade from the plaintiff"). This reputational harm is precisely the type of non-commercial injury *Lexmark* and *PharmacyChecker.com* foreclose. Therefore, as alleged, the claimed reputational harms do not satisfy the standing requirements under the Lanham Act.

10

Next, the harm related to Plaintiffs' reimbursement rate theory fares no better, as it is overly speculative and ignores the complexities inherent in commercial contract negotiations. The Complaint speculates that "*if* EmblemHealth had to offer a real network of mental health providers," it "*would* have to pay providers market rates to participate." Compl. ¶ 129 (emphases added). This kind of speculative, conclusory allegation cannot confer standing. *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1126 (S.D.N.Y. 1993), *aff'd*, 32 F.3d 690 (2d Cir. 1994) (no Lanham Act standing where damages allegations amount to speculation that profits might be greater absent defendant's conduct).

The "administrative burden" allegations—that is, the cost associated with the providers' end of maintaining directory information—similarly do not suffice. These alleged "burdens" are just ordinary costs of market participation that exist regardless of any alleged deception. The Complaint fails to allege that these administrative burdens were proximately caused by Emblem or the claimed directory issues; rather, the allegations state they are the cost "to maintain directory information"—not the cost of correcting any issue that can be traced to Emblem. Compl. ¶ 125; *see Lexmark*, 572 U.S. at 133-34 (plaintiff must show "economic or reputational injury *directly flowing* from the deception") (emphasis added); *Souza,* 68 F.4th at 119 (indirect competitors "must present some affirmative indication" of causation) (citation omitted). Accordingly, because the Complaint does not allege commercial injury to the individual Association Members directly flowing from Emblem's conduct, they lack statutory standing under the Lanham Act.

Second, the Association Plaintiffs lack Article III standing to assert claims on behalf of the Association Members because "the fact and extent of injury would require individualized proof," and "require [] the participation of individual members in the lawsuit." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004). (citations omitted). The Association Plaintiffs fail to

11

satisfy the third *Hunt* factor for a simple reason: both their claims and the relief they seek demand the participation of individual Association Members.

Directory "inaccuracy" is an inherently individualized inquiry, particularly under the Lanham Act, where the nature of the relief sought is outcome-determinative. *See Bano*, 361 F.3d at 714 ("[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.") (citation omitted). Whether any Association Member's listing is inaccurate turns on that provider's current practice status, office locations, contact information, insurance participation, and specialty designations. These facts differ from provider to provider and demand testimony and evidence from each individual Association Member whose listing is allegedly inaccurate. The Association Plaintiffs cannot establish a pattern of inaccuracy with respect to individual Association Members through generalized proof; rather, each alleged inaccuracy must be examined case by case.

Individual participation by each Association Member is also indispensable because neither the Association Plaintiffs nor their Association Members directly compete with EmblemHealth. That matters: the Lanham Act requires non-direct competitors to prove actual commercial injuries flowing from the challenged conduct. *Souza*, 68 F.4th at 119. Any such injury is necessarily unique to each Association Member's circumstances—how many patients could not reach them, whether those patients sought care elsewhere, and whether the Association Member lost income as a result. These individualized inquiries into harm cannot be resolved through representative litigation. *See, e.g., Bano*, 361 F.3d at 715 (*Hunt's* third prong unsatisfied where "[p]articipation by individual property owners would be needed to permit identification of which properties were contaminated.").

12

Here, to correct allegedly inaccurate listings, the Court would need to identify which specific information is wrong for each Association Member, determine what the correct information should be, and verify whether each Association Member actually participates in EmblemHealth's network. The associations cannot supply this information because they do not possess the admissible, provider-specific data required to craft an appropriate injunction. Individual Association Member participation is therefore essential. *See Warth v. Seldin*, 422 U.S. 490, 515-16 (1975) (associational standing unavailable where resolution requires individualized proof). Therefore, the APA and NYSPA lack standing to bring Lanham Act claims on behalf of their Association Members.

The Complaint's own allegations confirm this fatal defect. Plaintiffs allege various inaccuracies, including wrong phone numbers, wrong addresses, outdated network participation status, and incorrect availability to new patients. Compl. ¶¶ 59-79. But each of these is inherently provider-specific: one psychiatrist may have moved offices while another left the network entirely; one may have fielded complaints from frustrated patients while another experienced none; one may have changed a phone number while another simply did not answer calls. And whether any Association Member suffered reputational harm—negative reviews from failed appointment attempts, damaged relationships with referring physicians, lost referrals—depends entirely on that Association Member's unique circumstances. No amount of generalized statistical evidence or "secret shopper" surveys can substitute for the individualized proof each Association Member's situation demands.

The conclusion is inescapable: the Association Plaintiffs lack standing, both on their own behalf and on behalf of their Association Members. Thus, the federal claims must be dismissed, and with them, this Court's basis for original jurisdiction. To the extent the Association Members

13

wish to assert these claims, they must do so in their individual capacities, which they have not done in this case. *See Bano*, 361 F.3d at 715 (association failed to satisfy association standing requirements, which provides "a narrow exception from the ordinary rule that a litigant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'").

## B.    The Court Should Decline to Exercise Jurisdiction Over the Putative Class Claims

Because all federal claims should be dismissed, the Court lacks original jurisdiction over this action. This alone is enough for the Court to decline to exercise supplemental jurisdiction over the remaining New York common law and statutory claims (unfair competition, unjust enrichment, N.Y. GBL §§ 349, 350, N.Y. Insurance Law § 4226). *See* 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction"); *Martin v. Sprint United Mgmt. Co.*, No. 15 CIV. 5237 (PAE), 2017 WL 5028621, at *2 (S.D.N.Y. Oct. 31, 2017) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") (citing *Sefovic v. Mem'l Sloan Kettering Cancer Ctr.*, No. 15 Civ. 5792 (PAC), 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017)); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties."). These considerations are especially compelling here, where the New York Attorney General has already addressed every category of harm alleged in the Complaint through the comprehensive AOD. The state regulatory process has provided complete relief, rendering federal court intervention duplicative and unnecessary.

14

However, even if the Lanham Act claims were to remain in this case (which they should not), the Court should abstain from exercising jurisdiction over the New York state claims under the Class Action Fairness Act of 2005 ("CAFA")—a statute enacted in large part to curb class action forum shopping. 28 U.S.C. § 1332(d)(4)(B). The "home-state controversy exception" under CAFA requires federal courts to decline to exercise jurisdiction where two-thirds or more of the members of the proposed class and the primary defendant(s) are citizens of the state where the action is filed. *See id.*, *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013). Given the nature of the New York statutory and common law claims alleging Plan Member complaints related to the in-state distance from a New York provider (*see* Compl. ¶¶ 71-72, 81), that each named Plan Member Plaintiff is alleged to live in or around New York City (*see* Compl. ¶¶ 21-26), and that EmblemHealth is a New York company (*see* Compl. ¶¶ 27-28), it is evident that this CAFA exception applies. Consequently, the Court must abstain from exercising jurisdiction over the Plan Member Plaintiffs' New York state claims, regardless of the outcome of the Lanham Act claims.

Dismissal of the class claims is further justified because the Plan Member Plaintiffs appear to seek statutory damages in connection with their New York statutory claims, which New York law precludes in the context of a class action. Compl. ¶¶ 142–153 (alleging EmblemHealth's knowledge, a necessary prerequisite for N.Y. Insurance Law § 4226 statutory damages), ¶ 254 (requesting "trebled and punitive damages," available under certain circumstances in connection with NY GBL §§ 349 and 350 claims). Under New York law, "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action" unless the statute "specifically authorizes the recovery thereof in a class action." CPLR 901(b); *see also Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 214 (2007) ("Where a statute is already

15

designed to foster litigation through an enhanced award, CPLR 901(b) acts to restrict recoveries in class actions absent statutory authorization."); *Borden v. 400 E. 55th St. Assocs., L.P.*, 24 N.Y.3d 382, 394-95 (2014) (recognizing that claim for $50 minimum damages under General Business Law §349(h) could not be brought as a class action). Class members seeking remedies not authorized by statute must opt out of the class. *See, e.g.*, *Downing v. First Lenox Terrace Assoc.*, 107 A.D.3d 86, 89 (1st Dep't 2013), *aff'd sub nom. Borden v. 400 E. 55th St. Assocs., L.P.*, 24 N.Y.3d 382 (2014) ("[E]ven where a statute creates or imposes a penalty, the restriction of CPLR 901(b) is inapplicable where the class representative seeks to recover only actual damages and waives the penalty on behalf of the class, and individual class members are allowed to opt out of the class to pursue their punitive damages claims.").

Unable to pursue statutory penalties as a class in New York state Court, Plaintiffs appear to seek federal court jurisdiction as a workaround, thereby shoehorning Lanham Act claims into a complaint that otherwise revolves exclusively around questions of New York law. This is precisely the type of forum manipulation that CAFA was designed to prevent. The Court should not countenance Plaintiffs' attempts to sidestep these restrictions on remedies imposed by New York law.

Accordingly, the Court should decline to exercise jurisdiction over the New York common law and statutory claims. Beyond principles of comity and statutory requirements, exercising jurisdiction here would serve no practical purpose: the AOD already provides every form of injunctive, equitable, and compensatory relief to which Plaintiffs are entitled. *See infra* at IV.D. Federal judicial resources should not be expended to adjudicate claims where the relief has already been obtained through binding state regulatory action.

C.    No Reasonable Consumer Would Have Been Deceived

Regardless of the Court's decision on standing and whether to exercise supplemental jurisdiction over Plaintiffs' state law claims, each of Plaintiffs' claims fails as a matter of law. Under both the Lanham Act and New York GBL §§ 349 and 350, "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (affirming dismissal).

Here, Plaintiffs' own allegations defeat their claims. The Complaint acknowledges that the "Find a provider" tool includes a disclaimer stating that the information is self-reported by providers and verified only at initial credentialing and every three years. Compl. ¶¶ 87-88. A reasonable consumer viewing a database that discloses these limitations would understand that it is not a warranty of real-time availability. The directory does not represent that every listing is accurate at all times—it expressly disclaims such accuracy. *See Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 357 (S.D.N.Y. 2021) (disclaimers or similar clarifying language may defeat a claim of deception). Where, as here, a defendant discloses the limitations of its information, consumers are on notice and cannot claim deception. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (GBL § 349 requires that the challenged act be "likely to mislead a reasonable consumer acting reasonably under the circumstances").

Moreover, certain alleged "inaccuracies" identified in the Complaint are, by Plaintiffs' own admission, "immediately and obviously apparent to anyone who utilizes the provider directory." Compl. ¶ 152. Where purported deficiencies are self-evident, no consumer acting reasonably would be deceived. *See Oswego*, 85 N.Y.2d at 26.

The same analysis applies to Plaintiffs' claims under New York Insurance Law § 4226, which prohibits "misleading" statements by insurers. Given the disclosed limitations of the

17

directory and the obvious nature of certain alleged inaccuracies, no reasonable insured would have been misled.

Accordingly, the Court can and should determine as a matter of law that EmblemHealth's provider directory, accompanied by its disclaimers and with its self-evident limitations, would not deceive a reasonable consumer. Plaintiffs' causes of action fail to state a claim and should be dismissed. Moreover, even if the Court were to find some theoretical basis for deception, this litigation would be an empty exercise: the AOD has already addressed the alleged directory deficiencies through comprehensive remediation requirements, ongoing verification protocols, and independent monitoring. Any judgment on consumer deception would have no practical effect beyond what the AOD already mandates.

### D.    Plaintiffs Cannot Obtain Meaningful Relief Beyond the AOD

Plaintiffs' claims should be dismissed because they cannot obtain any meaningful relief beyond what the AOD already provides. This is a fundamental question of judicial utility: where comprehensive relief has already been secured through binding regulatory authority, it would waste judicial resources to adjudicate claims for which all available relief has already been secured.

The AOD addresses every category of harm Plaintiffs allege and provides every form of relief they seek. As detailed above, the AOD requires EmblemHealth to:

- Maintain an accurate online provider directory with comprehensive data fields;

- Verify every behavioral health provider's information every ninety days;

- Correct directory listings within two business days of learning of changes;

- Remove non-responsive providers within fifteen days of a verification cycle;

- Respond to Plan Member inquiries within one business day;

- Hold Plan Members harmless when inaccurate network status information is provided;

18

- Pay restitution to all affected Plan Members with twelve percent interest;

- Pay $2.5 million in penalties, fees, and costs; and

- Submit to oversight by an independent monitor for at least three years.

Ex. B ¶¶ 78-104, 109. This is precisely the relief Plaintiffs seek. The Complaint demands injunctive relief requiring EmblemHealth to maintain an accurate directory, verify provider information, correct errors promptly, and compensate affected consumers—all of which the AOD already mandates. Implementation of the AOD's remediation requirements is already well underway. *See, e.g.*, Ex. B ¶¶ 82-88 (requiring EmblemHealth to submit various policies and procedures designed to achieve compliance with the AOD within 30 days of the AOD's Effective Date). Any judgment this Court could enter would simply duplicate the binding obligations EmblemHealth has already assumed.

Courts routinely dismiss claims where plaintiffs have already received the relief they seek through parallel regulatory action. *See, e.g.*, *Charlton v. LG Energy Sol. Michigan, Inc.*, No. 321CV02142RBMJLB, 2023 WL 1420726, at *4-*5 (S.D. Cal. Jan. 31, 2023) (claims dismissed where product recall pursuant to regulator program provided complete relief); *Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (claims dismissed where defendant entered into "statutorily mandated and administratively overseen national recall process" subject to continued regulatory oversight) (citation omitted); *see also Kommer v. Ford Motor Co.*, No. 1:17-CV-296 (LEK/DJS), 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) ("[Plaintiff] has not suffered an injury if the defect can be repaired for free") (citation omitted). Here, EmblemHealth's conduct is subject to binding legal compulsion under the AOD, with significant monetary penalties for non-compliance and oversight by an independent

19

monitor. Ex. B ¶¶ 92-103, 107, 110. The regulatory process has achieved what Plaintiffs' lawsuit seeks to accomplish.

Because the AOD provides comprehensive prospective injunctive relief, ongoing monitoring, and restitution to affected Plan Members, Plaintiffs cannot identify any additional relief this Court could provide and to which it is entitled under the law. Proceeding with this litigation would waste judicial resources to adjudicate claims for which relief has already been secured. The Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion to Dismiss the Complaint in its entirety. The Association Plaintiffs lack standing under the Lanham Act, the Court should decline to exercise jurisdiction over the Plan Member Plaintiffs' claims, the consumer deception claims fail as a matter of law, and Plaintiffs cannot obtain any meaningful relief beyond what the AOD already provides.

Dated: April 3, 2026
     New York, New York

Respectfully Submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: _/s/ Amanda H. Freyre_____
Amanda H. Freyre
Maria T. Galeno
31 West 52nd Street
New York, NY 10019-6131
(212) 858-1000
Amanda.freyre@pillsburylaw.com
Maria.galeno@pillsburylaw.com

*Counsel for Defendants EmblemHealth, Inc. and EmblemHealth Plan, Inc.*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss was filed with the Court via the Court's CM/ECF system, which will provide electronic notification to all counsel of record.

Dated: April 3, 2026

 _/s/ Amanda H. Freyre_____
Amanda H. Freyre

*Counsel for Defendants EmblemHealth, Inc.,*
*and EmblemHealth Plan, Inc.*

21

## CERTIFICATE OF COMPLIANCE

I, Amanda H. Freyre, an attorney duly admitted to practice before this Court , hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") and Rule 3(D) of Judge John G. Koeltl's Individual Rules and Practices in Civil Cases (the "Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, contains 5760 words in accordance with the Local and Individual Rules, and otherwise complies with the formatting requirements specified in the Local and Individual Rules. In making this calculation, I have relied on the word count of the word-processing program used to prepare the document.

Dated: April 3, 2026

/s/ Amanda H. Freyre

Amanda H. Freyre

*Counsel for Defendants EmblemHealth, Inc.,*
*and EmblemHealth Plan, Inc.*

22