UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AMERICAN PSYCHIATRIC ASSOCIATION, THE NEW YORK STATE PSYCHIATRIC ASSOCIATION, on their behalf and in an associational capacity on behalf of their members, and MILEN BEYENE, VALERIA CALDERON, ELIZABETH CANTY, BONNIE DORIS ELLIOTT, DANIEL RICCOBONO, and NIMROD SHIMRONY, on behalf of themselves and all others similarly situated, | Case No. 1:25-cv-10783-JGK |
| Plaintiffs, | Hon. John G. Koeltl |
| v. | |
| EMBLEMHEALTH, INC. and EMBLEMHEALTH PLAN, INC., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

I.   The Association Plaintiffs Lack Standing............................................................... 2

  A.  The First *Hunt* Factor Is Not Satisfied................................................................ 2

  B.  The Third *Hunt* Factor Is Not Satisfied ............................................................. 3

    1.   Individualized Proof of Consent Is Required.................................................. 3
    2.   The Directory Does Not Establish False Affiliation ....................................... 5
    3.   Statistical Proof Cannot Establish Falsity...................................................... 6
    4.   Individualized Proof Is Necessary to Establish Harm .................................... 6

II.  The Court Should Decline Supplemental Jurisdiction............................................ 8

III. The AOD Renders the Associations' Claims Unnecessary. ................................... 9

IV.  The Disclaimer Defeats Plaintiffs' Claims............................................................. 9

CONCLUSION.................................................................................................................. 10

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*APFA Inc. v. UATP Mgmt., LLC,*
 537 F. Supp. 3d 897 (N.D. Tex. 2021) ................................................................5

*Brown v. NFL Players Ass'n,*
 281 F.R.D. 437 (C.D. Cal. 2012) .........................................................................4

*Building & Construction Trades Council of Buffalo v. Downtown Development, Inc.,*
 448 F.3d 138 (2d Cir. 2006) .................................................................................7

*Chufen Chen v. Dunkin' Brands, Inc.,*
 954 F.3d 492 (2d Cir. 2020) ...............................................................................10

*eBay Inc. v. MercExchange, L.L.C.,*
 547 U.S. 388 (2006) ..............................................................................................7

*Electra v. 59 Murray Enters., Inc.,*
 987 F.3d 233 (2d Cir. 2021) .................................................................................4

*Fink v. Time Warner Cable,*
 714 F.3d 739 (2d Cir. 2013) ...............................................................................10

*FRHUEB, Inc. v. Abdala,*
 No. 21-CV-07395 (MMG), 2025 WL 901809 (S.D.N.Y. Mar. 25, 2025) .............7

*Hunt v. Washington State Apple Advertising Commission,*
 432 U.S. 333 (1977)........................................................................... *passim*

*International Code Council, Inc. v. UpCodes Inc.,*
 43 F.4th 46 (2d Cir. 2022) ..................................................................................10

*Irish Lesbian & Gay Org. v. Giuliani,*
 949 F. Supp. 188 (S.D.N.Y. 1996) (Koeltl, J.), *aff'd in part, rev'd in part*, 143 F.3d 638 (2d Cir. 1998) ..................................................................................................5

*JFK Health & Welfare Fund, Inc. v. Analie Tours, Inc.,*
 No. 06-CV-2868, 2008 WL 819066 (E.D.N.Y. Mar. 25, 2008)..............................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
 572 U.S. 118 (2014)..............................................................................................3

*Mantikas v. Kellogg Co.,*
 910 F.3d 633 (2d Cir. 2018)................................................................................10

*Mazzei v. Money Store*,
828 F.3d 260 (2d Cir. 2016)...................................................................................4

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
418 F.3d 168 (2d Cir. 2005)...................................................................................5

*Millennium Access Control Tech., Inc. v. On the Gate, LLC*,
No. 15-CV-6067(SJF)(AKT), 2017 WL 10445800 (E.D.N.Y. Feb. 14, 2017).........................8

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
828 F. Supp. 1114 (S.D.N.Y. 1993), *aff'd*, 32 F.3d 690 (2d Cir. 1994)....................................3

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995)...............................................................................................10

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*,
629 F. Supp. 3d 116 (S.D.N.Y. 2022).....................................................................3

*Rivell v. Private Health Care Systems, Inc.*,
887 F. Supp. 2d 1277 (S.D. Ga. 2012)......................................................................4

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
559 U.S. 393 (2010).............................................................................................2, 7

*Skillz Platform Inc. v. Papaya Gaming, Ltd.*,
No. 24CV1646 (DLC), 2025 WL 3268799 (S.D.N.Y. Nov. 21, 2025)...................................3

*Souza v. Exotic Island Enters., Inc.*,
68 F.4th 99 (2d Cir. 2023) ....................................................................................1, 2

*Stutman v. Chemical Bank*,
95 N.Y.2d 24 (2000) ...............................................................................................10

*Warth v. Seldin*,
422 U.S. 490 (1975)..................................................................................................7

Statutes and Codes

United States Code
Title 15, Section 1125(a)(1)(A) ...............................................................................4

Lanham Act............................................................................................. *passim*

Rules and Regulations

Civil Practice Law and Rules
Section 901(b)......................................................................................................2, 8

Defendants submit this Reply Memorandum of Law in support of their Motion to Dismiss.[1]

## INTRODUCTION

Plaintiffs' opposition confirms what was apparent from the outset: this lawsuit is not about vindicating falsely affiliated psychiatrists. It is about circumventing New York's procedural rules to secure statutory penalties unavailable in state court. The Lanham Act claims exist solely to manufacture federal jurisdiction.

Plaintiffs contend that Defendants "effectively concede[d]" their False Affiliation claim because Defendants' motion "only address[es] the legal standards for False Advertising claims." (Opp. at 10.) False. Both claims require that Association Members suffered cognizable Lanham Act injuries. Both fail for the same reasons. Moreover, associational standing under *Hunt* requires that "neither the claim asserted nor the relief requested requires the participation of individual members." False affiliation claims fail this test because proving that specific providers did not consent turns on each provider's individual contractual relationship with EmblemHealth.

Nor does Plaintiffs' opposition address the first *Hunt* factor: that Association Members lack standing because, as non-direct competitors, they must plead "actual injury and causation." *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 119 (2d Cir. 2023). The alleged harms—reputational injury, suppressed reimbursement, administrative burdens—do not constitute cognizable commercial injury. (Mem. at 9–11.) Plaintiffs do not dispute this.

Plaintiffs contend they can prove false affiliation using "EmblemHealth's own records, the Associations' records, and statistical evidence." (Opp. at 15.) Wrong. Aggregate statistics cannot substitute for individualized proof that specific providers did not consent. Establishing falsity and

---

[1] All capitalized terms not otherwise defined herein have the meanings set forth in Defendants' opening brief. (ECF No. 30.)

irreparable harm both require provider-specific evidence—precisely what the third *Hunt* factor prohibits.

Plaintiffs' discussion of CPLR § 901(b) reveals the architecture of this lawsuit. Plaintiffs trumpet that *Shady Grove*, 559 U.S. 393 (2010), allows them to seek class-wide statutory penalties in federal court that state court would bar. (Opp. at 18.) Having found a route to penalties unavailable under New York law, Plaintiffs shoehorn Lanham Act claims into a state-law consumer protection case—manufacturing federal jurisdiction for penalties and fee windfall for counsel.

Finally, Plaintiffs' contention that this litigation remains necessary because they "cannot enforce" the AOD and EmblemHealth has history of failed compliance (Opp. at 22–23.), ignores the comprehensive enforcement regime now in place. The injunctive relief the Associations seek is what the AOD mandates. Any remaining Plan Member claims arise under New York law and belong in state court. And the directory's disclaimer independently defeats Plaintiffs' deception claims.

## ARGUMENT

### I.    The Association Plaintiffs Lack Standing

#### A.    The First *Hunt* Factor Is Not Satisfied

Plaintiffs' opposition does not address Defendants' threshold argument that Association Members lack standing. Under the first *Hunt* factor, an association may bring claims only if its "members would otherwise have standing to sue in their own right." 432 U.S. at 343. They would not.

Where a Lanham Act plaintiff is a non-direct competitor, it must plead "actual injury and causation." *Souza*, 68 F.4th at 119. Association Members do not compete with EmblemHealth— they are psychiatrists; EmblemHealth is an insurer. Standing requires that the Complaint allege

commercial injury "directly flowing from" EmblemHealth's conduct. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133–34 (2014).

The Complaint alleges three categories of harm, none of which suffices. (Mem. at 9–11.) Plaintiffs do not dispute this showing.

**Reputational harm.** The Complaint fails to allege that reputational harm caused any consumer to "withhold trade" from Association Members or diverted business—the hallmarks of commercial injury. *See Skillz Platform Inc. v. Papaya Gaming, Ltd.*, No. 24CV1646 (DLC), 2025 WL 3268799, at *4 (S.D.N.Y. Nov. 21, 2025). This is the non-commercial injury that *Lexmark* and *PharmacyChecker.com* foreclose. *See* 629 F. Supp. 3d 116, 130 (S.D.N.Y. 2022).

**Suppressed reimbursement rates.** The Complaint speculates that "if EmblemHealth had to offer a real network," it "would have to pay providers market rates." Compl. ¶ 129. This speculative, conclusory allegation cannot confer standing. *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1126 (S.D.N.Y. 1993), *aff'd*, 32 F.3d 690 (2d Cir. 1994).

**Administrative burdens.** The alleged "burdens" of correcting listings are ordinary costs of market participation that exist regardless of deception. The allegations state they are the cost "to maintain directory information," not to correct issues traceable to EmblemHealth. Compl. ¶ 125; *see Lexmark*, 572 U.S. at 133–34; *Souza*, 68 F.4th at 119.

Because the Complaint does not allege commercial injury directly flowing from EmblemHealth's conduct, the Association Members lack Lanham Act standing. Plaintiffs offer no response.

**B.    The Third *Hunt* Factor Is Not Satisfied**

**1.    Individualized Proof of Consent Is Required**

A false affiliation claim requires proof that the defendant's conduct "is likely to cause confusion . . . as to the affiliation" of the plaintiff with the defendant. 15 U.S.C. § 1125(a)(1)(A).

3

Count I alleges that EmblemHealth "misrepresent[s] that the falsely listed mental health providers . . . have a consensual business partnership or contract with Defendants." Compl. ¶ 189(b). Plaintiffs must establish that specific representations are *false*—i.e., that particular providers did not consent.

Whether any given provider consented depends on facts unique to that provider: the terms of any agreement, whether the provider terminated the relationship, and when. *See Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 251 (2d Cir. 2021). These individualized determinations are what *Hunt* prohibits.

*Rivell v. Private Health Care Systems, Inc.*, 887 F. Supp. 2d 1277 (S.D. Ga. 2012), is directly on point. The Medical Association of Georgia sued a preferred provider organization for using member physicians' names without consent. The court denied associational standing: "because the issue of consent is particularized and fact-intensive, it is not apt for singular determination in a case involving scores of plaintiffs." *Id.* at 1291. The association argued standing was appropriate because defendant's conduct was "systematic." The court rejected this: "Whether that practice was unlawful can only be answered through discrete and individualized determinations." *Id.*[2]

---

[2] Although the court initially deferred ruling on associational standing at the pleadings stage, it ultimately held that the association lacked standing because "the issue of consent is particularized and fact-intensive" and "not apt for singular determination in a case involving scores of plaintiffs." 887 F. Supp. 2d at 1291; *see also Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 444 (C.D. Cal. 2012) ("[M]anifestations of consent will necessarily vary from individual to individual."); *see also Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (denying class certification because "without class-wide evidence that class members were

So too here. Even if EmblemHealth engaged in a "systematic" practice of listing providers without consent, whether any given listing was unlawful depends on whether *that specific provider* consented. Uniformity of conduct does not cure the need for individualized proof.

Individualized proof is also required where the alleged false information varies. In *JFK Health & Welfare Fund, Inc. v. Analie Tours, Inc.*, No. 06-CV-2868, 2008 WL 819066, at *5 (E.D.N.Y. Mar. 25, 2008), the court held an association lacked standing because "some members were defrauded to a greater degree than others." Here too: some providers may never have been affiliated; others may have terminated; still others may have disputed affiliations. This variation defeats associational standing.[3]

Courts consistently deny associational standing where claims require individualized proof, even when only injunctive relief is sought. *See Irish Lesbian & Gay Org. v. Giuliani*, 949 F. Supp. 188, 197 (S.D.N.Y. 1996) (Koeltl, J.), *aff'd in part, rev'd in part*, 143 F.3d 638 (2d Cir. 1998); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005); *APFA Inc. v. UATP Mgmt., LLC*, 537 F. Supp. 3d 897, 909 n.12 (N.D. Tex. 2021).

**2.    The Directory Does Not Establish False Affiliation**

Plaintiffs contend that "most of Plaintiffs' allegations can be proven by analysis of the directory itself." (Opp. at 15.) That is a red herring. The allegations they claim can be proven by the directory relate to *Plan Member* claims, not false affiliation:

---

in fact in privity with The Money Store, the fact-finder would have to look at every class member's loan documents to determine who did and who did not have a valid claim.").

[3] Although the court initially deferred ruling on associational standing at the pleadings stage, it ultimately held that the association lacked standing. 887 F. Supp. 2d at 1291; *see also Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 444 (C.D. Cal. 2012); *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016).

**Directory-based allegations.** Duplicate listings, miscategorized credentials, and inaccessible providers do not establish false affiliation. A provider listed twenty-nine times may still be genuinely affiliated. Miscategorized credentials require individualized inquiry—and non-psychiatrists in psychiatrist searches are not Association members. These are consumer-accessibility issues relevant to Plan Member GBL claims, not false affiliation.

The only allegation pertaining to *falsity* of affiliation—as opposed to consumer confusion—is that certain providers do not actually participate in EmblemHealth's network. And that claim requires individualized proof from providers themselves.

### 3. Statistical Proof Cannot Establish Falsity

Plaintiffs say they can prove their claims using "statistical evidence and 'secret shopper' surveys." (Opp. at 15–16.) But statistical evidence cannot establish whether specific providers consented. A false affiliation claim requires proof that a *specific representation* is *false*. Statistics showing some percentage of listings may be inaccurate does not identify *which* providers did not consent.

The NYAG "secret shopper" report identifies providers who could not be reached—not that they did not consent to be listed. Plaintiffs' expert matching listings to Psychology Today is even less probative: Psychology Today is a self-reported website with no verification process. Consent is inherently individualized, depending on each provider's agreement and whether the provider terminated the relationship. Further, determining which listings to correct requires provider-specific testimony.

### 4. Individualized Proof Is Necessary to Establish Harm

Plaintiffs say the individualized injuries alleged—negative reviews, damaged relationships, lost referrals—are "wholly irrelevant" because "such evidence pertains only to damages, not injunctive relief." (Opp. at 17.) That is legally incorrect.

6

This confuses remedy with right. The Complaint's allegations of reputational harm, loss of control, and administrative burden are the injuries Plaintiffs must prove to satisfy the irreparable harm requirement. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *FRHUEB, Inc. v. Abdala*, No. 21-CV-07395 (MMG), 2025 WL 901809, at *3 (S.D.N.Y. Mar. 25, 2025).[4] Without proof of actual irreparable harm, Plaintiffs are not entitled to injunctive relief.

Plaintiffs allege four categories of injury: (1) loss of control over reputations; (2) reputational harm; (3) administrative burdens; and (4) suppressed rates. Each requires individualized proof.

**Loss of control and reputational harm.** Establishing this injury requires specific providers to testify that they suffered reputational consequences. No aggregate data can supply this testimony. The Associations cannot prove reputational injury without their members.

**Administrative burdens.** These allegations can only be proven through individual provider testimony, and EmblemHealth would be entitled to test that testimony through discovery.

**Suppressed reimbursement rates.** To make a case for this injury, Plaintiffs must first establish that the directory is "inflated" by false affiliations—an inherently individualized determination.

---

[4] APA's cited authorities do not support a different result. *Building & Construction Trades Council of Buffalo v. Downtown Development, Inc.*, 448 F.3d 138 (2d Cir. 2006), involved environmental exposure claims not requiring individualized proof of consent. And *Warth v. Seldin*, 422 U.S. 490, 515 (1975), actually undermines APA's position: the Court held the association lacked standing, and its observation about prospective relief predates *Hunt*'s clarification that an association has standing only when "neither the claim asserted nor the relief requested requires the participation of individual members." 432 U.S. at 343.

Each category of injury requires individualized proof from individual providers—the type of inquiry that defeats associational standing.

## II.    The Court Should Decline Supplemental Jurisdiction.

Plaintiffs' opposition reveals the real reason for this lawsuit's structure. Plaintiffs celebrate that *Shady Grove*, 559 U.S. 393 (2010), allows them to pursue class-wide statutory penalties in federal court that CPLR § 901(b) would bar in state court. (Opp. at 18.)

Plaintiffs need federal jurisdiction to obtain statutory penalties. Federal jurisdiction requires a federal claim. So Plaintiffs shoehorn Lanham Act claims into a consumer protection case, manufacturing federal jurisdiction to unlock penalties New York law was designed to prevent.

This is the forum manipulation CAFA was enacted to curb.[5] That the Associations "disclaim any legal or equitable monetary relief" underscores the point: they are here to provide the federal hook for treble damages, statutory penalties, and attorneys' fees unavailable in state court.

The Court should dismiss the Lanham Act claims for lack of associational standing and decline supplemental jurisdiction over the remaining state-law claims. Plan Members may pursue any remaining monetary relief in state court, subject to New York's procedural rules.

---

[5] *See also Millennium Access Control Tech., Inc. v. On the Gate, LLC*, No. 15-CV-6067(SJF)(AKT), 2017 WL 10445800, at *12 (E.D.N.Y. Feb. 14, 2017) (plaintiff must plead injury to commercial interest in sales or business reputation) (cleaned up).

**III.    The AOD Renders the Associations' Claims Unnecessary.**

Plaintiffs contend the AOD does not moot their claims because they "cannot enforce" it and EmblemHealth has a "15-year history of failed compliance." (Opp. at 22–23.) This ignores the comprehensive enforcement architecture now in place.

The AOD establishes oversight through an independent monitor submitting biannual compliance reports, with significant monetary penalties for non-compliance.

The specific injunctive relief the Associations seek—directory correction, corrective disclosures, process reforms—is what the AOD already mandates. The AOD requires verification every ninety days, corrections within two business days, removal of non-responsive providers within fifteen days, and responses to inquiries within one business day. Implementation is underway.

Plaintiffs say prior AODs failed. (Opp. at 22–23.) But the 2026 AOD is fundamentally different: it includes independent monitoring, biannual reporting, 90-day verification cycles, and meaningful penalties—none of which prior AODs contained.

Plaintiffs identify alleged gaps such as "more provider information, including treatment modality, provider schedule." (Opp. at 23.) But the Lanham Act prohibits false representations; it does not mandate disclosure categories Plaintiffs deem helpful. That the primary relief sought is already provided by the AOD underscores that these claims should be dismissed.

**IV.    The Disclaimer Defeats Plaintiffs' Claims.**

Plaintiffs argue the disclaimer is a "factual question" that "cannot be resolved on a motion to dismiss." (Opp. at 19–21.) Wrong. Plaintiffs do not dispute that EmblemHealth's directory includes a prominent disclaimer that provider information "is self-reported and verified during the initial credentialing process and every three years." Compl. ¶ 88. They argue only that the disclaimer is "buried in a drop-down menu."

9

Courts routinely dismiss consumer deception claims at the pleading stage where disclosures negate any reasonable inference of deception. *See Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).

Plaintiffs also concede that certain inaccuracies, such as duplicate listings, are "immediately and obviously apparent." Compl. ¶ 152. Self-evident deficiencies cannot form the basis of a deception claim. *See Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). Where consumers can see search results contain duplicates or distant providers, no reasonable consumer would be deceived.

Plaintiffs' cases merely confirm that *some* disclaimer questions require factual development. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 639 (2d Cir. 2018). Here, the disclaimer appears on the initial search page—the page a user must encounter before any search. *International Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 62 (2d Cir. 2022), does not establish that disclaimer adequacy is always a jury question. Where the disclaimer is unambiguous and appears where consumers must encounter it, dismissal is appropriate. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).

Plaintiffs' argument that the disclaimer must disclose every category of inaccuracy proves too much. A disclosure need not negate every possible misunderstanding. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). The disclaimer informs consumers that information is self-reported and verified periodically. A reasonable consumer would understand the directory is not a warranty of current accuracy.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion to Dismiss. The Association Plaintiffs lack Lanham Act standing, the Court should decline jurisdiction over the Plan Member claims, the directory disclaimer defeats Plaintiffs' deception

10

claims as a matter of law, and Plaintiffs cannot obtain meaningful relief beyond what the AOD provides.

Dated: June 12, 2026       Respectfully Submitted,
       New York, New York

       PILLSBURY WINTHROP SHAW PITTMAN LLP

       By: _/s/ Amanda H. Freyre_____
       Amanda H. Freyre
       Maria T. Galeno
       31 West 52nd Street
       New York, NY 10019-6131
       (212) 858-1000
       Amanda.freyre@pillsburylaw.com
       Maria.galeno@pillsburylaw.com

       *Counsel for Defendants EmblemHealth, Inc. and EmblemHealth Plan, Inc.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing Reply Memorandum of Law in Support of

Defendants' Motion to Dismiss was filed with the Court via the Court's CM/ECF system, which

will provide electronic notification to all counsel of record.

Dated: June 12, 2026

                         _/s/ Amanda H. Freyre_____
                         Amanda H. Freyre

                         *Counsel for Defendants EmblemHealth, Inc.,*
                         *and EmblemHealth Plan, Inc.*

## CERTIFICATE OF COMPLIANCE

I, Amanda H. Freyre, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") and Rule 3(D) of Judge John G. Koeltl's Individual Rules and Practices in Civil Cases (the "Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, contains 2724 words in accordance with the Local and Individual Rules, and otherwise complies with the formatting requirements specified in the Local and Individual Rules. In making this calculation, I have relied on the word count of the word-processing program used to prepare the document.

Dated: June 12, 2026

 /s/ Amanda H. Freyre
Amanda H. Freyre

*Counsel for Defendants EmblemHealth, Inc.,*
*and EmblemHealth Plan, Inc.*

13