UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN PSYCHIATRIC ASSOCIATION, ET AL.,

Plaintiffs,

- against -

EMBLEMHEALTH, INC., ET AL.,

Defendants.

25-cv-10783 (JGK)

Memorandum Order and Opinion

**John G. Koeltl, District Judge:**

The American Psychiatric Association, the New York State Psychiatric Association (collectively, the "Association Plaintiffs"), and six members (collectively, the "Plan Member Plaintiffs") of a health insurance plan offered by the defendants bring this action against defendants EmblemHealth, Inc. and EmblemHealth Plan, Inc. (collectively, "EmblemHealth"). Complaint ("Compl."), ECF No. 1 at 1, ¶ 6. The Association Plaintiffs bring their claims on their own behalf as well as in an associational capacity on behalf of their members, and the Plan Member Plaintiffs bring their claims on their own behalf and on behalf of a putative class of similarly situated members of health insurance plans offered by EmblemHealth. Id. at 1. All of the plaintiffs' claims relate to their central allegation that EmblemHealth publishes directories of in-network mental healthcare providers that contain inaccurate, deceptive, and misleading listings – or in industry parlance, "ghost networks." Id. ¶¶ 1–6.

EmblemHealth now moves to dismiss the Complaint in its entirety for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.s' Mem. in Supp. of Mot. to Dismiss, ECF No. 30 ("Mot.") at 1. For the reasons that follow, EmblemHealth's motion is **granted in part and denied in part.**

**I.**

Unless otherwise noted, the following facts are taken from the Complaint and are accepted as true for purposes of the current motion.

**A.**

The American Psychiatric Association (the "APA") and the New York State Psychiatric Association ("NYSPA") are membership organizations for psychiatrists who live or work in the United States and New York State, respectively. Compl. ¶¶ 16, 18. Each organization works towards the advancement of mental healthcare in their respective jurisdictions, and as part of that mission, each organization has sought to eliminate the barriers to accessing healthcare presented by misleading directories of healthcare providers published by insurers. Id. ¶¶ 16–19.

Each Plan Member Plaintiff is an employee of the City of New York who is enrolled in EmblemHealth's GHI Comprehensive Benefits Plan ("GHI CBP"), a self-funded health benefits plan sponsored by the City. Id. ¶¶ 21–26. Each Plan Member Plaintiff has sought mental healthcare from providers in the GHI CBP network, but has either been delayed in doing so or prevented entirely from doing so due to inaccuracies in the directories published by EmblemHealth. Id. EmblemHealth, Inc. is a New York not-for-profit corporation

that provides health insurance plans purporting to cover mental healthcare. Id. ¶ 27. EmblemHealth Plan, Inc. is also a New York not-for-profit corporation, and is a wholly owned subsidiary of EmblemHealth, Inc. Id. ¶ 28. These two entities hold themselves out publicly as one company called "EmblemHealth." Id. ¶ 29.

In connection with the health insurance plans that it offers, EmblemHealth publishes a directory of participating mental healthcare providers for GHI CBP members (the "Directory"), to assist plan members to identify providers covered by their health insurance plan. Id. ¶¶ 80–81. The Directory contains listings of providers purportedly covered by its health insurance plans, alongside information such as the provider's location, contact information, and whether the provider accepts new patients. Id. ¶ 81. However, the Directory is replete with inaccurate information, impeding plan members' attempts to find in-network providers for the healthcare services that they need. Id. ¶¶ 56–59. The plaintiffs characterize the Directory as reflecting a "ghost network" of mental healthcare providers, that is, a network of providers that appears to be robust on its face, but in practice is limited to a smaller set of providers who are unable to serve plan members' medical needs adequately. Id. ¶¶ 1, 56–59.

In order to access the Directory, plan members are directed to a webpage titled "Find a provider," from which they are able to search for providers by plan, keyword, and location. Id. ¶¶ 86–87. This online interface is the only way for an EmblemHealth plan member to search specifically for in-network

mental healthcare providers. Id. ¶ 87. EmblemHealth operates the "Find a provider" page through a partnership with Carelon Behavioral Health, Inc., a separate organization whose network of mental healthcare providers is also available to EmblemHealth plan members. Id. ¶¶ 85–88.

Once EmblemHealth plan members have accessed the Directory, a number of deficiencies impede them from using the information contained therein to obtain mental healthcare. To begin with, a majority of the mental healthcare providers listed are duplicates of providers who are also listed elsewhere in the Directory. Id. ¶¶ 60–64. Similarly, a large share of the mental healthcare providers listed in the Directory are at least tacitly characterized as physicians, when in fact, they are non-physician healthcare providers such as nurse practitioners and social workers. Id. ¶¶ 65–66. Moreover, other providers included in the Directory include hospital-based practitioners who only provide inpatient care, as well as mental healthcare providers who only provide services remotely. Id. ¶¶ 70, 73. The Directory also features outdated and inaccurate contact information for numerous mental healthcare providers. Id. ¶¶ 77–79.

The plaintiffs allege that the inaccurate information contained in the Directory injures a wide array of participants who seek mental healthcare. As a result of the Directory's artificially inflated number of providers, prospective plan members are presented with a misleading account of a network that is not as large as it purports to be. Id. ¶ 114. Current plan members are presented with an array of incorrect provider information that may delay or prevent them from obtaining the medical care that they seek. Id. ¶119. Further, providers of

mental healthcare are injured by the provision of inaccurate information regarding their practices in the Directory. For example, a psychiatrist may experience reputational damage when a prospective patient contacts the psychiatrist under the misimpression that the provider is in-network, and the provider must inform the plan member that the provider does not accept EmblemHealth insurance. Id. ¶122. These misdirected inquiries may also impose an administrative burden on providers' practices, including the need to remove or correct information in the Directory. Id. ¶¶ 126–28. Moreover, by artificially inflating the number of mental healthcare providers included in the Directory, EmblemHealth is able to represent falsely that its network of mental healthcare providers is adequate when in fact, it is not. Id. ¶ 129. The plaintiffs contend that EmblemHealth's misleading representation of network adequacy lends it leverage in negotiations with mental healthcare providers, and in turn, allows it to obtain lower reimbursement rates for providers in its network. Id. ¶¶ 129–30.

**B.**

Over the course of the last two decades, the New York Attorney General's office (the "NYAG") has investigated and monitored EmblemHealth's provider directories, and entered into multiple assurances of discontinuance ("AOD") with EmblemHealth and its subsidiaries regarding the accuracy of the information contained in those directories. Id. ¶¶ 51–54. Most recently, in 2026 the NYAG and EmblemHealth entered into a further AOD (the "2026 AOD") effective February 16, 2026. Assurance of Discontinuance Among NYAG and

Emblem Health, Inc., et al., Ex. B to Freyre Decl., ECF No. 31-2 ("2026 AOD") ¶¶ 72–73, 130.[1] The 2026 AOD requires EmblemHealth and certain agents and affiliates thereof to undertake a broad range of remedial measures aimed at improving the accuracy of their healthcare provider directories. Id. ¶¶ 77–104. At present, EmblemHealth is subject to multiple AODs regarding the accuracy of its healthcare provider directories including the 2026 AOD. See id.; Compl. ¶¶ 51–54.

**C.**

On December 30, 2025, the plaintiffs filed the Complaint. Id. at 68. The Complaint sets forth seven claims, including three on behalf of the Association Plaintiffs and four on behalf of the Plan Member Plaintiffs. Id. ¶¶ 183–250. On behalf of the Association Plaintiffs, the Complaint sets forth claims for false affiliation and false advertising in violation of the Lanham Act, as well as a state-law claim for unfair competition. Id. ¶¶ 183–209. On behalf of the Plan Member Plaintiffs, the Complaint sets forth state-law claims for deceptive acts and practices, false advertising, misrepresentations in violation of New York insurance law, and unjust enrichment. Id. ¶¶ 210–50. Each of the claims

---

[1] On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." Hu v. City of New York, 927 F.3d 81, 88 (2d Cir. 2019). Under this principle, "[c]ourts may take judicial notice of public documents or documents of public record." Casey v. Odwalla, Inc., 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (collecting cases). Here, the Court takes judicial notice of the 2026 AOD as a government record available to the public online.

brought on behalf of the Plan Member Plaintiffs is also brought on behalf of a putative class consisting of "[a]ll individuals who are currently, or were previously, enrolled in a health benefit plan issued and/or administered by EmblemHealth between 2023 and 2025."[2] Compl. ¶¶ 174, 210–50. On April 3, 2026, the defendants moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim. Mot. at 20.

## II.

When presented with a motion to dismiss under Rule 12(b)(1) and a motion to dismiss on other grounds, the Court considers the question of subject-matter jurisdiction first. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

"A case is properly dismissed ... under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). To prevail against a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Id. In considering such a motion, the Court generally must accept as true the material factual allegations in the complaint. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. Id. Indeed, where jurisdictional facts are

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

If the Court is satisfied that subject matter jurisdiction is present, it will then turn to the defendants' alternative grounds for dismissal. In this case, the defendants contend that regardless of the Court's determinations as to jurisdiction, the complaint should be dismissed, at least in part, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the facts alleged in the light most favorable to the plaintiff, "the tenet that a court

must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

## III.

In its motion to dismiss, EmblemHealth sets forth four arguments for dismissal, including that the Association Plaintiffs lack standing to bring their federal claims, that the exercise of supplemental jurisdiction over the plaintiffs' state-law claims is inappropriate, that the plaintiffs have failed to plead adequately consumer confusion, and that the 2026 AOD, as a practical matter, renders the plaintiffs' claims moot. For the reasons described below, EmblemHealth's motion to dismiss is **granted in part and denied in part.**

### A.

EmblemHealth first argues that the complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. Mot. at 13–14. In brief, EmblemHealth reasons that the Association Plaintiffs' federal claims pleaded under the Lanham Act – the only federal claims that any plaintiff asserts in this action – should be dismissed for lack of standing, and in turn, that absent any federal claims, the Court lacks original subject matter jurisdiction over this action. Id. at 8–14.

The Association Plaintiffs bring two claims under the Lanham Act, one for unfair competition and false affiliation pursuant to 15 U.S.C. § 1125(a)(1)(A), and a second for false advertising pursuant to 15 U.S.C. § 1125(a)(1)(B). Compl. ¶¶ 183–203. The Association Plaintiffs assert these claims on their own behalf and on behalf of their members, Id. ¶ 20, but

EmblemHealth contends that the Association Plaintiffs lack standing to bring their Lanham Act claims in either capacity. Mot. at 9. An association has Article III standing to bring a claim on behalf of its members where: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). With respect to the Association Plaintiffs' Lanham Act claim for false advertising, EmblemHealth contends that the first and third prongs are not satisfied, while conceding that the Association Plaintiffs seek to protect interests germane to their organizational purpose. Mot. at 10–14. However, EmblemHealth's motion to dismiss does not address the Association Plaintiffs' Lanham Act claim for false affiliation and unfair competition beyond its generalized contention that "the Association Plaintiffs' Association Members do not have standing to assert the Lanham Act claims." See id.

First, EmblemHealth contends that the Association Plaintiffs do not have association standing to bring their Lanham Act claims because their members would not have standing to bring those claims in their own right. Mot. at 10. In so arguing, EmblemHealth relies on the United States Supreme Court's decision in Lexmark Int'l, Inc. v. Static Control Components, Inc., and its holding that a plaintiff must show "an injury to a commercial interest in reputation or sales" in order to establish standing to bring certain claims under

Section 43(a) of the Lanham Act. 572 U.S. 118, 131–32 (2014). Applying this rule in the context of false advertising claims, the United States Court of Appeals for the Second Circuit has instructed that putative Lanham Act plaintiffs must allege injury to show that "deception of consumers causes them to withhold trade from the plaintiff." Id. at 133; Souza v. Exotic Island Enters., Inc., 68 F.4th 99, 118 (2d Cir. 2023). In light of these requirements, EmblemHealth contends that the Association Plaintiffs have failed to allege that consumers have withheld trade from their members, and in turn, that the Association Plaintiffs have failed to allege a commercial or reputational injury to their members, barring the Association members (and in turn, the Association Plaintiffs themselves) from establishing standing. Mot. at 10–11.

In response, the Association Plaintiffs contend that they have alleged injuries sufficient to establish standing for their false advertising claim. Pl.'s Mem. in Opp'n to Def.s' Mot. to Dismiss, ECF No. 35 at 12–14. Specifically, the plaintiffs rely on the Complaint's allegations: that "[f]alsely listed psychiatrists are called by confused consumers"; that such calls cause "reputational damage . . . that harms the psychiatrist's practice"; that this damage is magnified by online reviews; and that EmblemHealth has received many negative reviews itself. Id. at 13. But this is insufficient to plead the sort of injury required by Lexmark to confer standing, because the plaintiffs have failed to allege that any consumers have withheld trade from the Association members. See, e.g., PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy, 629 F. Supp. 3d 116, 131–32 (S.D.N.Y. 2022) (dismissing a false advertising claim brought

pursuant to Section 43(a)(1)(B) where the plaintiff alleged a reputational injury, but failed to allege that this injury "caus[ed] consumers to withhold trade from [the plaintiff]"); Avalos v. IAC/Interactivecorp., No. 13-cv-8351, 2014 WL 5493242, at *5 (S.D.N.Y. Oct. 30, 2014) (dismissing a false advertising claim brought pursuant to Section 43(a)(1)(B) where the plaintiff failed to allege that deception on the part of defendants "led consumers to withhold trade from [that plaintiff] by, for example, visiting its websites less often"). Because the plaintiffs have failed to allege that EmblemHealth's advertising has caused any consumers to withhold trade from the Association members, none of those parties has standing to bring a false advertising claim under the Lanham Act.

However, the plaintiffs' failure to allege that consumers have withheld trade is not a basis on which to find that the Association Plaintiffs lack standing to bring their false affiliation claim. The Association Plaintiffs allege that their members have been injured by their false affiliation with EmblemHealth because consumers hold negative views of EmblemHealth, and EmblemHealth's misrepresentation that it is affiliated with certain Association members causes consumers to view those healthcare providers in a negative light as well. Compl. ¶¶ 120–22. Although Lexmark's withheld-trade requirement was framed in terms of what "a plaintiff suing under § 1125(a)" generally must "ordinarily . . . show," that decision only assessed false advertising claims pursuant to 15 U.S.C. § 1125(a)(1)(B) as opposed to other Lanham Act claims, such as false affiliation, brought pursuant to 15 U.S.C. § 1125(a)(1)(A). 572 U.S. at 124–25, 133. Accordingly, this requirement does not apply to the

plaintiffs' false affiliation claim. See Videri, Inc. v. ONAWHIM (OAW) Inc., No. 1:23-cv-2535 (GHW), 2024 WL 4027980, at *14 (S.D.N.Y. Sept. 3, 2024) ("Lexmark's requirement that a plaintiff plead economic or reputational injury was specific to the false-advertising claims with which it was concerned."). Because the defendants have failed to demonstrate that the Association members lack standing to bring their false affiliation claim, their argument under the first prong of Hunt fails with respect to that cause of action.

EmblemHealth also argues that the Association Plaintiffs lack standing on the basis of Hunt's third prong, which allows standing only where "neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit," Hunt, 432 U.S. at 343, because assessment of the alleged injury would require individualized proof. Mot. at 11. EmblemHealth premises this argument on the notion that the inaccuracies at the core of the Lanham Act claims present "an inherently individualized inquiry" that turns on the details of a given provider's practice, such as "current practice status, office locations, contact information, insurance participation, and specialty designations." Mot. at 12. However, in analyzing Hunt's third prong, courts have reasoned that individual participation is seldom required where the relief sought is injunctive in nature and not individualized as to specific members. While "[t]his does not mean . . . that an association automatically satisfies the third prong of the Hunt test simply by requesting equitable relief rather than damages . . . where the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its

members, the Hunt test may be satisfied." Bano v. Union Carbide Corp., 361 F.3d 696, 714 (2d Cir. 2004). This is because where "the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." Warth v. Seldin, 422 U.S. 490, 515 (1975); see also Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc., 448 F.3d 138, 150 (2d Cir. 2006) ("[B]ecause the [plaintiff invoking association standing] seeks civil penalties and injunctive relief only, not money damages, its claims do not require individualized proof," and the third Hunt prong "is therefore also clearly satisfied.").

Here, the Association Plaintiffs' false affiliation claim seeks "equitable and injunctive relief" that would inure to the Association members' benefit without regard for the specific circumstances of their injury by "requir[ing], among other things, correction of inaccurate directories, issuance of corrective disclosures, and establishment of appropriate practices and procedures to ensure that the directories are accurate and consistent with the disclosures." Compl. ¶ 191. What is more, the evidence relevant to the Association members' alleged injuries is largely ascertainable from the face of the Directory, and otherwise can be supplemented with other generalized statistical evidence. This is sufficient to clear the low bar imposed on association standing where the relief sought is injunctive in nature, and therefore EmblemHealth's argument under the Hunt's third prong fails. Accordingly, although the Association

Plaintiffs do not have standing to bring their false advertising claim under the Lanham Act, they have standing to bring their false affiliation claim.

**B.**

EmblemHealth also contends that the Court should decline to exercise supplemental jurisdiction over the plaintiffs' remaining five claims, each of which arises under New York law. This argument is twofold. First, EmblemHealth argues that the Court should abstain from exercising jurisdiction on the basis of an exception to the Class Action Fairness Act ("CAFA") concerning the citizenship of the proposed class's members. Mot. at 15. Second, EmblemHealth argues that the Court should abstain from exercising jurisdiction because the Plan Member Plaintiffs "appear to seek statutory damages in connection with their New York statutory claims" which would be precluded by New York law. Id. Each argument fails as a matter of law, and there is no legal impediment to the Court's exercising supplemental jurisdiction over the plaintiffs' New York law claims.

First, EmblemHealth contends that the Court should decline jurisdiction on the basis of the "home-state controversy exception" to CAFA. Id. This statutory exception to federal jurisdiction provides that "[a] district court shall decline to exercise jurisdiction under paragraph 2 . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (emphasis added); see also Gold v. New York Life Ins. Co., 730 F.3d 137, 141 (2d Cir. 2013). But

EmblemHealth misreads this provision. The home-state controversy exception is explicitly limited in scope to federal courts' jurisdiction arising under CAFA, 28 U.S.C. § 1332(d)(2), see 28 U.S.C. § 1332(d)(4)(A)(i), a provision that provides for minimal diversity jurisdiction in covered class actions. 28 U.S.C. § 1332(d)(2). That is not the basis for jurisdiction in this case. Instead, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the plaintiffs have pleaded a federal claim, and the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Because jurisdiction is not premised on 28 U.S.C. § 1332(d)(2), exceptions to that jurisdiction are not relevant to this Court's jurisdiction over this action, and EmblemHealth's argument under CAFA fails.

Next, EmblemHealth argues that the Court should abstain from exercising jurisdiction over the plaintiffs' state-law claims because "the Plan Member Plaintiffs appear to seek statutory damages in connection with their New York statutory claims, which New York law precludes in the context of a class action." Mot. at 15. EmblemHealth premises this argument on a provision of New York law that bars plaintiffs from bringing "an action to recover a penalty, or minimum measure of recovery created or imposed by statute . . . as a class action" unless that statute "specifically authorizes the recovery thereof in a class action." Mot. at 15; C.P.L.R. 901(b); see also Sperry v. Crompton Corp., 863 N.E.2d 1012, 1017 (N.Y. 2007) ("Where a statute is already designed to foster litigation through an enhanced award, CPLR 901(b) acts to restrict recoveries in class actions absent statutory authorization."). Because the Plan

Member Plaintiffs would be unable to pursue the New York law penalties that they seek had they sought them in a New York state-court class action, EmblemHealth reasons that they should not be able to seeks the same New York law penalties in a federal-court class action. Mot. at 15–16. But this argument is foreclosed by the United States Supreme Court's decision in Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010). In Shady Grove, the Court assessed the very same New York law provision on which EmblemHealth relies in making this argument, and determined that New York's bar on statutory recovery in class actions was supplanted by Fed. R. Civ. P. 23, and did not prevent the plaintiffs from seeking such recovery in federal court. 559 U.S. at 407–10. Accordingly, CPLR 901(b) does not bar the Court from exercising supplemental jurisdiction over any of the plaintiffs' New York law claims, and this jurisdictional argument fails as well.

**C.**

Third, EmblemHealth argues that certain claims in this action – including, at a minimum, the plaintiffs' claims brought pursuant to the Lanham Act and New York General Business Law §§ 349 and 350 – should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because as a matter of law, the Directory would not have misled a reasonable consumer. Mot. at 17. In so arguing, EmblemHealth relies on the disclaimer that appears as part of the "Find a provider" interface, and in particular, its warning that certain information contained therein is self-reported and only updated every three years. Id. EmblemHealth also cites the "obvious[]" nature of the Directory's inaccuracies,

contending, in effect, that if its deficiencies are as immediately apparent as the plaintiffs claim they are, they would not be capable of misleading consumers. Id.

But whether the Directory is likely to mislead consumers presents a question of fact that cannot be resolved at this stage. Courts in this Circuit have consistently instructed that consumer confusion in the face of a disclaimer is a fact-intensive inquiry that requires discovery, rendering it inappropriate for resolution on a motion to dismiss. See, e.g., Mantikas v. Kellogg Co., 910 F.3d 633, 639 (2d Cir. 2018) (reversing dismissal where plaintiffs had made "sufficient factual allegations to state a claim that Defendant's conduct was, plausibly, deceptive"); Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46, 62 (2d Cir. 2022) ("[T]he sufficiency of UpCodes's disclaimer depends upon its effect on consumers, which raises factual questions that are not well suited for resolution on a motion to dismiss."); Duran v. Henkel of America, Inc., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (whether a misrepresentation is cured by a disclaimer "is generally a question of fact not suited for resolution at the motion to dismiss stage"). Resolving this fact-intensive question in EmblemHealth's favor at this stage would be particularly inappropriate given that the disclaimer at issue is not as comprehensive as the defendants suggest. While EmblemHealth characterizes this disclaimer as "stating that the information is self-reported by providers and verified only at initial credentialing and every three years," Mot. at 17, this overstates the scope of that language. Instead, the disclaimer warns consumers that "[t]he practice locations at which

the provider/facility will see members," rather than the information provided in the Directory generally, "is self-reported and verified during the initial credentialing process and every three years." Compl. ¶ 88 (emphasis added). Ultimately, whether the Directory is misleading or adequately qualified by a disclaimer are factual questions that are not susceptible to resolution on a motion to dismiss, and dismissal is not warranted on this basis.

**D.**

Finally, EmblemHealth contends that the "[p]laintiffs' claims should be dismissed because they cannot obtain any meaningful relief beyond what the AOD already provides," because the 2026 AOD accomplishes the ends sought by the plaintiffs in this action adequately, and "it would waste judicial resources to adjudicate claims for which all available relief has already been secured." Mot. at 18. This argument is unfounded. It is not the Court's role to decide which claims are sufficiently important to warrant the Court's attention. Although the 2026 AOD provides broad relief in response to the conduct alleged by the plaintiffs, whether the plaintiffs are entitled under the relevant law to obtain different relief is a question of fact and law that cannot be decided on a motion to dismiss.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For

the foregoing reasons, the defendants' motion to dismiss the Complaint is **granted and part and denied in part.**

The Clerk is respectfully requested to Close ECF No. 29.

**SO ORDERED.**

**Dated:** **New York, New York**
**November 23, 2026**

**John G. Koeltl**
**United States District Judge**